1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11    RICHARD LEE THOMAS,                    Case No.: 1:21-cv-01675-JLT-SKO

12                  Plaintiff,
                                             **FINDINGS AND RECOMMENDATIONS**
13         v.                                **TO GRANT DEFENDANTS' MOTION**
                                             **FOR SUMMARY JUDGMENT**
14    KERN VALLEY STATE PRISON, et al.,      **REGARDING EXHAUSTION**

15                  Defendants.              (Doc. 32)

16                                           **14-DAY OBJECTION PERIOD**

17

18          Plaintiff Richard Lee Thomas is proceeding pro se and *in forma pauperis* in this civil

19    rights action. This action proceeds on Plaintiff's Eighth Amendment excessive force claims

20    against Defendants Peralta and Sandoval and failure to intervene claim against Defendant

21    Melendez.

22          **I.     INTRODUCTION**

23          On October 22, 2024, Defendants filed a timely motion for summary judgment alleging

24    Plaintiff failed to exhaust his administrative remedies. (Doc. 32.) When Plaintiff failed to file a

25    response to Defendants' motion, the Court issued its Order to Show Cause (OSC) in Writing Why

26    Sanctions Should Not Be Imposed for Plaintiff's Failure to File an Opposition or Statement of

27    Non-Opposition on November 19, 2024. (Doc. 33.) On December 13, 2024, the Court issued its

28    Order Directing Clerk of the Court to Modify Plaintiff's Address of Record and to Re-Serve the

1   Order to Show Cause Issued November 19, 2024; Plaintiff was to respond within in 14 days.

2   (Doc. 34.)

3           On December 16 and December 23, 2024, Plaintiff filed responses to the OSC. (Docs. 35

4   & 37.) On December 30, 2024, Plaintiff filed an untitled document, addressed "To Whom It

5   Concerns." (Doc. 38.) That document was docketed as an opposition to Defendants' summary

6   judgment motion. On January 13, 2025, Defendants filed a timely reply to Plaintiff's opposition.

7   (Doc. 39.)[1]

8           **II.    PLAINTIFF'S ALLEGATIONS**

9                   Plaintiff contends that on March 23, 2021, Defendant Melendez

10          threatened to shoot him in the throat during a verbal altercation.
            (Doc. 13 at 3.) He asserts this led to Defendants Peralta and Sandoval

11          to stop Plaintiff in the yard as he went to get his morning medication.
            (*Id*.) Plaintiff alleges they directed him to place his hands on the wall

12          [and] patted him down in a body search. (*Id*.) Once Peralta and
            Sandoval handcuffed Plaintiff, they threw him aggressively to the

13          ground and unnecessarily beat him, "continually punching, kneeing
            [and] elbowing" Plaintiff in the head from behind. (*Id*.) Plaintiff

14          contends they forced his face into the "asphalt blacktop." (*Id*. at 3-4.)
            Plaintiff asserts Peralta and Sandoval "proclaimed an illegitimate

15          Code 1 violation on their intercom radios," falsely reporting battery
            on a peace officer. (*Id*. at 4.) Plaintiff alleges Melendez watched

16          Peralta and Sandoval "use unnecessary roughness and utitlize/assert
            police brutality in a malevolent, cruel & unusual, sadistic manner."

17          (*Id*.)

18                  Plaintiff contends that after the radio call, "more officers" responded
            and "began to partake in the criminally intentional & negligent acts

19          of policy brutality, by dropping knees" on Plaintiff while he lie
            prone. (Doc. 13 at 4.) Plaintiff asserts he was non-confrontational,

20          cooperative and compliant throughout the incident. (*Id*.) Plaintiff
            alleges he "was even yelling and shouting statements & claims of

21          brutal police misconduct." (*Id*.) He contends the official rules
            violation reports were "corroboratively fabricated falsely & illegally

22          in a framing of assault on officers." (*Id*.) Plaintiff states camera
            footage and photographs show his "swollen face, and the scuffs and

23          blood on officers knuckles & knees." (*Id*. at 5.) Plaintiff asserts
            neither pepper spray nor batons were used because he was

24          "complacent & compliant." (*Id*.)

25   (*See* Doc. 14 at 3-4 [Second Screening Order].)

26   _____

27   [1] On February 19, 2025, the Court issued its Order Granting Defendants' Second Ex Parte Application to
     Modify the Discovery and Scheduling Order, extending the deadline for filing dispositive motions to 45

28   days "after the order addressing the pending exhaustion motion is issued, if necessary." (Doc. 41.)

1

### III.    SUMMARY OF THE PARTIES' POSITIONS

2

#### *Defendants' Summary Judgment Motion re Exhaustion*

3    Defendants contend Plaintiff did not properly exhaust available administrative remedies

4    regarding his claims against Defendants Peralta, Sandoval, and Melendrez. Specifically,

5    Defendants assert Plaintiff failed to exhaust any relevant non-health care grievance, including

6    three non-health care grievances concerning the alleged use of force incident giving rise to his

7    claims in this action. Further, Defendants maintain that administrative remedies were available to

8    Plaintiff, but Plaintiff failed to avail himself of that process. Finally, to the extent this Court were

9    to find a genuine dispute of material fact regarding exhaustion, Defendants ask the Court to hold

10    an *Albino*[2] hearing.

11

#### *Plaintiff's Opposition*

12    Plaintiff acknowledges he failed to exhaust his administrative remedies to the highest

13    level regarding his claims against Defendants but contends that failure is irrelevant. He claims

14    "criminal activity needs to be reported and dealt with accordingly" and because he could not trust

15    the California Department of Corrections and Rehabilitation (CDCR) "and its form of

16    administrative resolutions," he elected to file a complaint. Plaintiff states that he finds "it absurd

17    that the focus of this civil complaint is being directed at [his] failure to exhaust administrative

18    remedies" when the Defendants are "getting away with" committing a crime against him. Plaintiff

19    states that the "appropriate solution" was to "do exactly what [he has done]," by taking "legal

20    action, in prosecuting a case against criminally active police officers." Plaintiff asserts that

21    although he has tried to find a lawyer to represent him, "there aren't any laws in place which call

22    for the need for proper representation for civil claims litigators" such as himself, allowing for a

23    lack of accountability from "criminal cops" and "no such thing as actual justice."

24

#### *Defendants' Reply*

25    Defendants contend that Plaintiff fails to show administrative remedies were unavailable

26    to him. Defendants assert Plaintiff's alleged failure to understand the CDCR grievance process is

27

28    _____

[2] *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

3

1    unpersuasive because Plaintiff was specifically advised of the relevant second level procedure

2    following denial of his grievances at the institutional level. Plaintiff's argument that his failure to

3    exhaust his administrative remedies is irrelevant is also improper because the Prison Litigation

4    Reform Act (PLRA) requires exhaustion prior to filing suit. Defendants ask this Court to grant the

5    summary judgment motion "based on Plaintiff's admitted failure to exhaust."

6         **IV.    APPLICABLE LEGAL STANDARDS**

7              **A.  Summary Judgment**

8              Summary judgment is appropriate when the moving party "shows that there is no genuine

9    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

10   Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine

11   issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

12   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by

13   "citing to particular parts of materials in the record, including depositions, documents,

14   electronically stored information, affidavits or declarations, stipulations …, admissions,

15   interrogatory answers, or other materials," or by showing that such materials "do not establish the

16   absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

17   evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears

18   the burden of proof at trial, "the moving party need only prove that there is an absence of

19   evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*,

20   477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

21             Summary judgment should be entered against a party who fails to make a showing

22   sufficient to establish the existence of an element essential to that party's case, and on which that

23   party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of

24   proof concerning an essential element of the nonmoving party's case necessarily renders all other

25   facts immaterial." *Id.* at 322-23. In such a circumstance, summary judgment should be granted,

26   "so long as whatever is before the district court demonstrates that the standard for the entry of

27   summary judgment … is satisfied." *Id.* at 323.

28

                                             4

1    **B. Exhaustion of Administrative Remedies**

2       The PLRA provides that "[n]o action shall be brought with respect to prison conditions

3    under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or

4    other correctional facility until such administrative remedies as are available are exhausted." 42

5    U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims

6    cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to

7    "complete the administrative review process in accordance with the applicable procedural rules,

8    including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548

9    U.S. 81, 88, 93 (2006).

10      The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v.*

11   *Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the

12   administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

13      The failure to exhaust administrative remedies is an affirmative defense, which the

14   defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of

15   producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if

16   the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff

17   failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

18      On a motion for summary judgment, the defendant must prove (1) the existence of an

19   available administrative remedy and (2) that the plaintiff failed to exhaust that remedy. *Albino,*

20   747 F.3d at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the

21   burden of production. That is, the burden shifts to the prisoner to come forward with evidence

22   showing that there is something in his particular case that made the existing and generally

23   available administrative remedies effectively unavailable to him." *Id.* (citation omitted).

24   "However, … the ultimate burden of proof remains with the defendant." *Id.*

25      An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642

26   (2016). An administrative remedy is unavailable "when (despite what regulations or guidance

27   materials may promise) it operates as a simple dead end with officers unable or consistently

28   unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so

5

1    opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to

2    provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when

3    prison administrators thwart inmates from taking advantage of a grievance process through

4    machination, misrepresentation, or intimidation." *Id*. at 643-44.

5         When the district court concludes that the prisoner has not exhausted administrative

6    remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v.*

7    *Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by

8    *Albino*, 747 F.3d at 1168-69.

9         "If a motion for summary judgment is denied, disputed factual questions relevant to

10   exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that

11   remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust

12   available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

13                          **C.  CDCR Grievance Process**

14        The CDCR has an administrative grievance system for prisoners to appeal a policy,

15   decision, action, condition, or omission by the department or staff if it has an adverse effect on

16   prisoner health, safety, or welfare. Prior to June 2020, the grievance process involved three levels

17   of review. Cal. Code Regs. tit. 15, §§ 3084-85. As of June 1, 2020, prisoners are required to

18   follow a two-level review procedure. Cal. Code Regs. tit. 15, §§ 3480-3487. Compliance with 42

19   U.S.C. § 1997e(a) requires California-state prisoners to utilize CDCR's grievance process to

20   exhaust their claims prior to filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir.

21   2010); *see also Woodford*, 548 U.S. at 85-86.

22                **V.    EVIDENTIARY MATTERS**

23        Plaintiff has failed to properly respond to Defendants' Statement of Undisputed Facts in

24   support of the motion for summary judgment. Plaintiff was served with a *Rand*[3] warning that

25   included the following language:

26                   In accordance with Local Rule 260(a), Defendants have filed a
                 Statement of Undisputed Facts that contains discrete, specific
27

---

28   [3] *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

1
2
3
4
5
6
7

material facts to support their entitlement to summary judgment. In response to this Statement, Local Rule 260(b) requires you to "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." You may also "file a concise Statement of Disputed Facts, and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication." *Id*. You are responsible for filing all evidentiary documents cited in the opposing papers. *Id*.

8   (Doc. 32-3 at 3.) Plaintiff neither reproduced Defendants' itemized facts, nor admitted or denied

9   those facts. Because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to

10   have admitted those facts. *See, e.g.*, *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by failing

11   specifically to challenge the facts identified in the defendant's statement of undisputed facts,

12   [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's]

13   statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal.

14   July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply

15   with Local Rule 260(b)); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

16   Nevertheless, where Plaintiff's verified complaint or evidence submitted in support of any

17   opposition to Defendants' motion for summary judgment bring Defendants' proffered facts into

18   dispute, the Court considered the complaint and any evidence. *Jones*, at 923 (the court considers

19   as evidence those parts of the verified complaint based on plaintiff's personal knowledge).

## VI.    DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

20
21   1.   Plaintiff Richard Thomas is an incarcerated person in the custody of the CDCR, and at
22        all times relevant to the First Amended Complaint (FAC) was incarcerated at Kern
23        Valley State Prison (KVSP).
24   2.   At all times relevant to the FAC, Defendants Peralta, Sandoval, and Melendrez were
25        employed by CDCR as correctional officers.
26   3.   Plaintiff filed the operative FAC on February 8, 2023.
27   4.   The Court screened the FAC under 28 U.S.C. § 1915A(a) and found that, when
28        liberally construed, it alleged a cognizable Eighth Amendment excessive force claim

against Defendants Peralta and Sandoval, and a failure to intervene claim against Defendant Melendrez.

5. At all times relevant to this action, CDCR required incarcerated persons to use an administrative grievance/appeal process to bring health care and non-health care related claims.

6. The Health Care Correspondence and Appeals Branch (HCCAB) receives, reviews, and maintains all health care related appeals (medical, dental, and mental health) while the Office of Appeals (OOA) receives, reviews, and maintains all appeals not related to health care issues.

7. At all times relevant to this action, the grievance/appeal process to exhaust administrative remedies was available to Plaintiff.

8. Title 15 of the California Code of Regulations governs the inmate appeal/grievance process for non-health care issues. Between June 1, 2020, and December 31, 2021, an incarcerated person was required to follow the procedures set forth in California Code of Regulations, title 15, sections 3480-3487, when submitting a non-health care related grievance/appeal.

9. The administrative remedy process for non-health care grievances has two levels of review. At the first level of review, the process requires the incarcerated person to submit a grievance in writing to the Institutional Office of Grievances (OOG) at the prison, reentry facility, or fire camp where they are housed within thirty (30) days of discovering an adverse policy, decision, action, condition, or omission of CDCR or its staff.

10. If the incarcerated person wishes to appeal the OOG's decision to the second level of review, then they may do so in writing to the OOA.

11. A decision from the OOA represents the final level of review in CDCR's grievance and appeal process for non-health care related issues.

12. Under the regulations, a claim is not deemed exhausted if it is rejected.

13. Between March 23, 2021, and February 8, 2023 (the Relevant Period), Plaintiff

8

submitted forty-one (41) non-health care grievances to the OOG at KVSP.

14. Based on Plaintiff's Appeal History Report, Plaintiff only submitted three (3) of these non-health care grievances to the OOA for final level review.

15. None of the three (3) grievances submitted to the OOA for final level review during the Relevant Period, identified as Appeal Log Nos. KVSP 150182, KVSP 161515, and KVSP 175770, contained allegations against Defendants Peralta, Sandoval, and Melendrez related to a March 23, 2021, use-of-force incident.

16. Plaintiff filed Grievance Log No. 161515 on September 8, 2021. Therein, Plaintiff complained about the denial of phone privileges.

17. The OOG denied Grievance Log No. 161515 on October 27, 2021, and Plaintiff appealed the denial decision to the OOA on December 16, 2021.

18. The appeal of Grievance Log No. 161515 alleged that Plaintiff had lost his phone privileges "because of a fight." The appeal also alleged that Plaintiff was the "victim in the case" and had fought in self-defense.

19. The OOA received the appeal of Grievance Log No. 161515 on December 20, 2021, and rejected it as untimely on February 3, 2022.

20. During the Relevant Period, Plaintiff filed three (3) non-health care grievances with the OOG that related to the March 23, 2021, incident at issue in this action: Grievance Log No. KVSP 126205; Grievance Log No. KVSP 165121; and Grievance Log No. KVSP 178196.

21. Plaintiff submitted Grievance Log No. KVSP 126205 on June 7, 2021, while he was housed in the short-term restricted housing (STRH) unit at KVSP.

22. Grievance Log No. KVSP 126205 alleged that Plaintiff sought to follow up on a request for legal assistance that he purportedly made "around the end of March, regarding a matter of police brutality." Plaintiff indicated that he had filed an "original 602 form multiple times" concerning alleged violations of his due process rights; however, Plaintiff averred that he did not know if the 602 form was turned in because of his [housing] placement. The grievance further contained allegations that Plaintiff

1    had been "illegally set up" for battery on a peace officer during the "police brutality

2    incident."

3    23. The KVSP OOG received Grievance Log No. KVSP 126205 on June 8, 2021, and

4    responded to the Plaintiff's claims on June 11, 2021.

5    24. The OOG rejected the claim in Grievance Log No. KVSP 126205, specifically

6    pertaining the alleged use-of-force issue arising on March 23, 2021, as untimely.

7    25. The OOG response to Grievance Log No. KVSP 126205 indicated that, if Plaintiff

8    was dissatisfied with the June 11, 2021 response, he could appeal the rejection

9    decision to the OOA.

10   26. Plaintiff did not submit Grievance Log No. KVSP 126205 to the OOA for review.

11   27. There is no record that Plaintiff submitted any non-health care grievance(s) in March

12   or April of 2021.

13   28. Plaintiff submitted Grievance Log No. KVSP 165121 to the OOG on September 9,

14   2021.

15   29. Grievance Log No. KVSP 165121 contained allegations pertaining to the incident on

16   March 23, 2021, and the subsequent handling of Plaintiff's personal property. Plaintiff

17   claimed that he wanted Officers Sandoval, Peralta, Melendrez, and others to be

18   charged with illegal search/seizure, aggravated assault, and the wrongful withholding

19   of Plaintiff's property. Plaintiff also alleged that he was "brutalized" by numerous

20   officers on March 23, 2021, during a "set up incident."

21   30. The OOG received Grievance Log No. KVSP 165121 on September 16, 2021, and

22   responded to the grievance on the same day.

23   31. The OOG determined that Grievance Log No. KVSP 165121 raised a claim regarding

24   the alleged use-of-force incident on March 23, 2021. Because the claim was not

25   submitted within the 30-day time frame required by the regulations and was

26   duplicative of Plaintiff's prior use-of-force allegations raised in Grievance Log No.

27   KVSP 126205, the OOG rejected the claim.

28   32. The September 16, 2021, response from the OOG advised that if Plaintiff was

10

dissatisfied with the response to Grievance Log No. KVSP 165121, he could appeal the rejection decision to the OOA.

33. Plaintiff did not submit Grievance Log No. KVSP 165121 to the OOA for review.

34. Plaintiff submitted Grievance Log No. 178196 on October 20, 2021, while Plaintiff was housed in the STRH unit at KVSP.

35. In Grievance Log No. 178196, Plaintiff requested a video recorded interview regarding the March 23, 2021, incident. Plaintiff alleged that he had "incriminating evidence" regarding the officers involved in the incident and wanted this information placed on the record.

36. The OOG rejected the claim in Grievance Log No. 178196 as untimely on October 21, 2021, and indicated that Plaintiff could appeal the rejection decision to the OOA.

37. Plaintiff did not appeal Grievance Log No. KVSP 178196 to the OOA for review. (*See* Doc. 32-2.)

**VII.    GRIEVANCES AND APPEALS DURING THE RELEVANT PERIOD**

Here, the relevant period involves March 23, 2021 (the date of the incident giving rise to Plaintiff's claims) through February 8, 2023 (the date that Plaintiff filed the FAC). For ease of reference, the Court will refer to the relevant grievances by their numerical portion only and to the relevant appeals by the last six digits only.

**Grievance Log Number 126205**

Plaintiff signed this grievance June 7, 2021. (Doc. 32-4 at 9.) Plaintiff explains he is following up on his "request to be appointed a civil rights advocate" and references filing an "original 602 form [illegible] times informing the [illegible] system of the criminal justice system violating" his due process rights. (*Id*.) He states he requested "due representation around end of March regarding matter of police brutality." (*Id*.) Plaintiff asserts he was "illegally set up for [an] alleged battery on a peace officer during a police brutality incident," that he "requested assistance of counsel through a D.A. as the plaintiff in the matter," and that his "demands of the criminal justice system's corrupt ways are being heard out." (*Id*.) He asserts that he has "rights and they're being violated like crazy" and that he did not "even know if [his] 602 form was turned in because

11

[he was] placed in the ASU" and it had "been 3 months." (*Id.*)

Plaintiff demands a fair and speedy trial, states his civil rights had been violated and he wishes "to press serious charges against specific officers in the CDCR for their corruption," states he would "have to sue for damages … because the criminal justice system is being corruptly manipulated against," and that he does not the financial means to retain an attorney but had the right to representation following false accusations. (Doc. 32-4 at 9.) The grievance was received at the institutional level —by the OOG at KVSP—the following day. (*Id.*)

On June 11, 2021, the OOG responded. (Doc. 32-4 at 10.) Plaintiff was advised his complaint "concerning Offender Services; Other Services – NOS" (Plaintiff's complaints involving state criminal proceedings) was reviewed and determined to be outside the OOG's jurisdiction. (*Id.*) Plaintiff was advised he could not resubmit that complaint because the OOG "only addresses grievances that are against the Department or departmental staff." (*Id.*) Regarding Plaintiff's use of force claim, it was rejected because he "did not submit the claim within the time frame required," or no later than April 22, 2021. (*Id.*) Plaintiff was further advised: "If you are dissatisfied with this response, you may appeal the rejection decision to CDCR's Office of Appeals." (*Id.*)

Plaintiff did not appeal the institutional level response to the Office of Appeals, or OOA. (*See* Doc. 32-4 at 5:17-18.)

**Grievance & Appeal Log Number 150182**

Plaintiff grievance is signed August 7, 2021. (Doc. 32-5 at 16.) Plaintiff identifies the subject as "Items that were lost in translation or stolen." (*Id.*) He explains that he had "just left the ASU" and discovered "practically half" of his property did not follow him to his new housing unit. (*Id.*) He states there is "important valuable property listed in [his] personal property." (*Id.*) Plaintiff also states he wants "to sue and press charges on these corrupt officers who are doing things of this nature all over the CDCR," that such action had "gone on long enough" and that those involved "need to be sentenced/incarcerated according to severity/nature of their crimes." (*Id.*) Plaintiff explains he did not attach supporting documents because the "computer system is unavailable for cross-referencable [sic] resources." (*Id.*) He asserts that "RVRs, computer dates,

1  how, the reports are written, who, what, when, where, how & why, need to investigate internal

2  affairs." (*Id.*)

3        In the institutional decision by the OOG, dated September 4, 2021, Plaintiff's claim was

4  "Disapproved" based on interviews with staff and Plaintiff, and a signed CDCR 1083 Inmate

5  Property Inventory form was signed by Plaintiff, "acknowledging all his property was inventoried

6  and accounted for prior to" his release "to Facility 'C' from STRH/ASU1." (Doc. 32-5 at 15.)

7  Plaintiff was advised: "If you are dissatisfied with the decision of this claim, you may file a 602-

8  2, appeal with the California Department of Corrections and Rehabilitation Office of Appeals."

9  (*Id.*)

10        Plaintiff's appeal is dated September 13, 2021. (Doc. 32-5 at 11-12.) Plaintiff explains he

11  is dissatisfied with the response he was given because the property referenced in his grievance

12  concerns property "moved into the ASU" rather than the property in his possession when he left

13  ASU, noting the "shit you stole from me before I was put in the hole. My guitar and shit like

14  that." (*Id.*) Plaintiff states he was "suing so just know this is on the record." (*Id.*) Plaintiff

15  identified the "3-23-21 RVR logs" written by "Pitchford and Melendrez & Sandoval" as

16  documents supporting his position that he was assaulted by staff. (*Id.*)

17        On December 6, 2021, the OOA responded indicating it received the claim on October 6,

18  2021, and that because "California Code of Regulations, title 15" provides the OOA has "60

19  calendar days to complete a response," "this response … will be the only response" due to the

20  expiration of that period. It reads: "Decision: Time Expired." (Doc. 32-5 at 10.)

21                    **Grievance & Appeal Log Number 161515**

22        Plaintiff grievance is signed September 7, 2021. (Doc. 32-5 at 26.) Plaintiff identified the

23  subject as "Phone 'Privileges' being denied illegally." (*Id.*) He explained he was "being illegally

24  retaliated against by uniformed public officials …" and generally asserted "illegal misconduct,"

25  "treason," "surveillance, torture." (*Id.*) Plaintiff asserted that "manipulation of the legal system as

26  uniformed police officials punishable by death, under penalty of perjury." (*Id.*)

27        In an institutional decision by the OOG dated October 27, 2021, Plaintiff's claim of

28  "being retaliated against by being denied phone privileges" was "Disapproved" following "a

13

1    thorough review of all documents and evidence presented." (Doc. 32-5 at 24.) The decision noted

2    Plaintiff received his allowed phone call for that month on September 5, 2021, at 10:45 a.m. (*Id.*)

3    Plaintiff was again advised: "If you are dissatisfied with the decision of this claim, you may file a

4    602-2, appeal with the California Department of Corrections and Rehabilitation Office of

5    Appeals." (*Id*. at 25-26.)

6        Plaintiff's related 602-2 form is not signed or dated. (Doc. 32-5 at 19-20.) Plaintiff states

7    he was "the victim in the case" and was "was attacked and fought in self-defense." Plaintiff states

8    he should not have been "placed on L&P for any reason at all because" he was the "victim in

9    incident" and has the right to defend himself. (*Id*. at 19.) Plaintiff sets forth his dissatisfaction for

10   losing his phone privileges "because of a fight" in which he "fought in self defense so" he should

11   not have been denied his "phone opportunity." (*Id*. at 20.) Plaintiff contends "RVR reports on

12   incident & even health records from that day" support his position. (*Id*.)

13       On February 3, 2022, the OOA responded stating Plaintiff's "claim is being rejected." It

14   reasoned that Plaintiff "did not submit the claim within the timeframe required … The date you

15   received a claim decision response from the Department was 10/27/2021; the date you submitted

16   this claim was 12/16/2021. You should have submitted your claim on or before 11/26/2021 to

17   meet the 30 calendar day requirement …." (Doc. 32-5 at 18.) It reads: "Decision: Rejected." (*Id*.)

18                    **Grievance Log Number 165121**

19       Plaintiff signed this grievance September 12, 2021. (Doc. 32-4 at 13 [Ex. 2 to Redmon

20   Decl.].) Plaintiff explains he "was brutalized" by "Sandoval, Peralta, Pitchford, J. Gomez-

21   Betancourt and other nameless officials" on March 23, 2021. (*Id*.) He alleges he "was grouped up

22   on illegally" and "manipulated by Melendez" in a "fabricated, instigated, setup incident." (*Id*.)

23   Plaintiff also contends his "property was illegally confiscated after police brutality incident … by

24   Greenwall officers, in a criminally derelict, treacherous act of negligent abuse of power &

25   treason." (*Id*.) He states that false charges were "pending" and he needs the "culprits detained"

26   and his property returned. (*Id*.) Plaintiff contends the illegal seizure of his property became "a

27   strong arm robbery," and that half of his property "was tampered with." (*Id*.)

28       On September 16, 2021, the OOG received the grievance. (*See* Doc. 32-4 at 14.) That

                                        14

1   same date, Plaintiff's use of force claim was rejected as untimely and duplicative of the claim in

2   log number 126205. (*Id*.) Plaintiff was advised: "If you are dissatisfied with this response, you

3   may appeal the rejection to CDCR's Office of Appeals." (*Id*.) His property claim was also

4   rejected as untimely and "substantially duplicative of a prior claim" and the advisement was

5   repeated. (*Id*.)

6          Plaintiff did not appeal the institutional level response to the Office of Appeals, or OOA.

7   (*See* Doc. 32-4 at 6:11-13.)

8                          **Grievance & Appeal Log Number 175770**

9          Plaintiff grievance is signed October 13, 2021. (Doc. 32-5 at 32.) Plaintiff alleges issues

10  with his property "for the last 2 1/2 to 3 months," that requests to be issued "a property

11  confiscation receipt" or "confiscation slip" so he could order new property and receive a "1-for-1

12  exchange." (*Id*.) He states that "Bess & Castellanos" had his property, that it is "illegal as hell,"

13  and involves "dereliction," "desertion of duty negligently" and "unproductive improper

14  improcedural [sic] protocol." (*Id*.) Plaintiff states if he does not receive "confiscation receipts" he

15  will sue and is "pressing lawsuit charges already against Sandoval, Peralta, Melendrez &

16  Pitchford." (*Id*.) He notes "items such as T.V., hot pot, Koss CL-205, C.D. player, electric shaver,

17  guitar & clothes items/canteen." (*Id*.)

18         Plaintiff's related 602-2 form was signed October 18, 2021. (Doc. 32-5 at 29.) Plaintiff

19  generally alleges he filed a grievance regarding the property issues "during last ASU term," it was

20  "not the first time" he filed a grievance on the matter, and he was "just being played technical

21  games with though." (*Id*.) He states he is "suing and this is on the record with separate log #s

22  too." (*Id*.) Plaintiff states: "Either give me my property back give me property confiscation

23  receipt for the property you're not giving me back, or take that off my personal property list so I

24  can have new property bought and administered to me without any complications." (*Id*.)

25         In the decision by the OOA, dated January 1, 2022, Plaintiff's claim was "Denied" as

26  untimely. (Doc. 32-5 at 28.) The decision noted that since Plaintiff "became aware of the issue"

27  giving rise to the claim on August 5, 2021, the claim should have been submitted no later than

28  "September 4, 2021," and the submission was "40 days past the 30 calendar day time limit." (*Id*.;

                                              15

see also Doc. 32-4 at 21 [Offender Grievances/Appeals; reflecting "OOA Decision – Denied"].)

**Grievance Log Number 178196**

Plaintiff signed this grievance on October 10, 2021. (Doc. 32-4 at 17.) Plaintiff states that he needed "to report a video recorded statement regarding matter that occurred 3-23-21 alleged battery on peace officer case." (*Id*.) He alleges "incriminating evidence intel regarding criminally active officers" exists and he is "suing for financial compensation & need the information on the record for D.A. reference in prosecuting." (*Id*.) The grievance was received at the institutional level the following day. (*Id*.)

On October 21, 2021, the institutional response rejected Plaintiff's use of force claim as untimely, noting such a claim should have been submitted by April 22, 2021, following an incident on March 23, 2021. (Doc. 32-4 at 18.) Plaintiff was again advised that if he was "dissatisfied" he could appeal the response to the OOA. (*Id*.)  Plaintiff did not appeal the institutional level response to the OOA. (*See* Doc. 32-5 at 7.)

**VIII.   DISCUSSION**

The Court must determine whether Plaintiff exhausted his administrative remedies regarding his Eighth Amendment claims of excessive force against Defendants Peralta and Sandoval and failure to protect claim against Defendant Melendez.

Plaintiff does not contend he exhausted his administrative remedies. Instead, he acknowledges he did not do so because he did not understand the process, he cannot trust CDCR, and that exhaustion is irrelevant. As such, Plaintiff has effectively admitted a failure to exhaust his administrative remedies. Additionally, the Court is not persuaded by Plaintiff's statement that he did not understand the relevant process or that he could not trust CDCR, as discussed below. Furthermore, contrary to Plaintiff's argument that administrative exhaustion is irrelevant, exhaustion of administrative remedies is a mandatory requirement of the PLRA. 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 211; *Woodford*, 548 U.S. at 88, 93; *Rhodes*, 621 F.3d at 1005.

Despite Plaintiff's admission that he failed to exhaust his administrative remedies, the Court proceeds to analyze Defendants' affirmative defense and related evidence.

**A. Plaintiff Has Failed to Exhaust His Administrative Remedies**

Following review, the Court notes log numbers 150182, 161515, and 175770 do not involve Plaintiff's complaints regarding excessive force or a failure to protect. Rather, these grievances and/or appeals relate to property issues that are not a subject of this action. Therefore, although Plaintiff exhausted his administrative remedies as to log numbers 161515 and 175770, none of these grievances or appeals exhaust his Eighth Amendment claims against Defendants.

Log numbers 126205, 165121, and 178196 relate to Plaintiff's claims in this action, alleging violations of the Eighth Amendment. Plaintiff failed to appeal the denial of log numbers 126205, 165121, and 178196 at the institutional level to the headquarters level or OOA. *See* UDF 15; *see also* Doc. 32-4 at 5:17-18, 6:11-13 & Doc. 32-5 at 7. Thus, Plaintiff's claims in this action are unexhausted. 42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 211 (exhaustion is mandatory).

**B. Defendants Have Met Their Initial Burden**

Based upon the foregoing, the Court finds Defendants have met their initial burden of showing there is no genuine issue of material of fact because there exists an available administrative remedy and Plaintiff failed to exhaust his administrative remedies regarding his Eighth Amendment claims against Defendants Peralta, Sandoval, and Melendez. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387; *Albino*, 747 F.3d at 1172.

**C. Plaintiff Has Failed to Meet His Burden of Production**

Because Defendants have met their initial burden, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Plaintiff has not done so.

As an initial matter, Plaintiff admits he did not exhaust his administrative remedies, but essentially argues his failure to do so is irrelevant. As noted above, exhaustion is mandatory, and Plaintiff must exhaust his claims against any defendant before filing suit. 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 211; *Woodford*, 548 U.S. at 88, 93; *Rhodes*, 621 F.3d at 1005.

Second, Plaintiff makes no showing or assertion that administrative remedies were unavailable to him. Simply stating he does not trust CDCR is insufficient. Plaintiff fails to allege

17

1   the grievance procedure operates as a simple dead end or is incapable of use, or that prison

2   officials thwarted his attempts to use the grievance process through machination,

3   misrepresentation, or intimidation. *Ross*, 578 U.S. at 643-44; *Sapp*, 623 F.3d at 823-24. Plaintiff

4   has failed to "come forward with evidence showing that there is something in his particular case

5   that made the existing and generally available administrative remedies effectively unavailable to

6   him." *Albino,* 747 F.3d at 1172.

7           To the extent Plaintiff contends he did not understand the grievance process, the record

8   establishes otherwise. Plaintiff was advised several times that if he was dissatisfied with the

9   institutional responses received from KVSP, he could appeal that outcome to the OOA, but failed

10  to appeal the denials. *See* Docs. 32-4 at 10, 14, 18 & 32-5 at 15, 24, 28; UDF 15.

11                      **D.      Summary of Findings**

12          In sum, Defendants met their initial burden to establish there is no genuine issue of

13  material fact in dispute. Plaintiff failed to set forth evidence showing his failure to exhaust

14  administrative remedies should be excused. In fact, Plaintiff admits his failure to exhaust.

15  Therefore, Defendants have met their ultimate burden to show Plaintiff failed to exhaust his

16  administrative remedies regarding his Eighth Amendment claims against Defendants Peralta,

17  Sandoval, and Melendez prior to filing suit. Thus, this Court will recommend Defendants' motion

18  for summary judgment be granted.

19                  **V.      CONCLUSION AND RECOMMENDATION**

20          Based upon the foregoing, the Court **HEREBY RECOMMENDS** that:

21      1.   Defendants' motion for summary judgment regarding exhaustion (Doc. 32) be

22           **GRANTED**;

23      2.   This action be **DISMISSED**, without prejudice, for failure to exhaust administrative

24           remedies; and

25      3.   The Clerk of the Court be **DIRECTED** to enter judgment accordingly and to close

26           this case.

27          These Findings and Recommendations will be submitted to the United States District

28  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days**

after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **May 6, 2025**                              /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE